UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DENISE MAGLIOTTI,
    Plaintiff,

v.     CASE No.

CITY OF DELTONA, FLORIDA
    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

The Plaintiff complains herein against the Defendant for subjecting her to unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964 and Section 1981 of the Civil Rights Act of 1866.

**PARTIES**

1. Plaintiff Denise Magliotti is a resident of Deltona, Florida.

2. Defendant City of Deltona is a municipal corporation organized under the laws of the State of Florida with a principal place of business in Volusia County, Florida.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to Article III of the United States Constitution.

4. The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 133, Title VII of the Civil Rights Act and Section 1981 of the Civil Rights Act of 1866.

5. Prior to commencing this action all conditions precedent were satisfied.

## STATEMENT OF FACTS

6. Plaintiff is of White Hispanic heritage and was employed as a Human Resource Coordinator by the City of Deltona since September 2014.

7. Plaintiff had ten years of employment with the City with great attendance, no disciplinary actions, and no negative evaluations.

8. On October 16, 2023, Floris Johnson was hired as the HR Director for the City of Deltona.

9. From October 16, 2023, Johnson displayed dismissive behavior toward Plaintiff, interrupting her interactions with employees, excluding her from meetings, and micromanaging her tasks.

10. On November 8, 2023, Plaintiff provided Johnson with her resume as requested. After reviewing the resume, Johnson acknowledged that Plaintiff was the most knowledgeable in the department and instructed her to train both Lynann Koerick (Lyne) and Seth Weaver on many of her responsibilities.

11. Despite this acknowledgment, Johnson consistently displayed negativity toward Plaintiff, which gradually escalated to discriminatory comments, reassignment of responsibilities, and public belittling.

12. In November 2023, when Plaintiff brought up difficulties in training Lyne during meetings, Johnson would dismiss her comments and act as if she didn't understand what language Plaintiff was speaking.

13. On February 1, 2024, during a meeting, Johnson made an offensive comment implying that a female employee had received a promotion only because she "slept with someone." This comment was made in the presence of Seth Weaver and Lynann Koerick.

14. On February 2, 2024, Johnson criticized and belittled Plaintiff for sending a follow-up email to Interim City Manager Glenn Whitcomb. In the presence of Lynann, Johnson stated with disgust that it was inappropriate for someone in Plaintiff's position to communicate with him.

15. On February 12, 2024, Johnson handed Plaintiff a list of files for an auditor review. When Plaintiff asked clarifying questions to ensure she retrieved the correct documents, Johnson abruptly cut her off and told her to "stop talking."

16. On February 13, 2024, Plaintiff met with Lynann Koerick to express concerns about Johnson's discriminatory treatment and her consistent criticism of Plaintiff's work. No action was taken.

17. On February 14, 2024, Plaintiff met with Johnson to express concerns about being treated unfairly. Johnson dismissed her concerns and suggested she take a long, hard look at her future within the department, and that may be human resources wasn't for her.

18. On February 16, 2024, Plaintiff assisted HR Analyst Seth Weaver by translating a phone call for a Spanish-speaking/Hispanic resident who needed guidance regarding a job application.

19. After completing the call, Plaintiff was called into Johnson's office where Johnson, in the presence of Seth and Lynann, angrily instructed Plaintiff to stop translating for Spanish-speaking residents going forward, to communicate only in English, and to direct residents to obtain copies of applications from the library.

20. During this meeting, Johnson made derogatory comments stating that undocumented individuals do not qualify for positions in the City and that they were seeking to apply for government benefits, a comment which Lynann agreed with.

21. Plaintiff perceived these comments to be racially motivated.

22. Later on February 16, 2024, Plaintiff received paperwork to process a promotion for Lynann to an HR Manager position with a $20,000 raise. The job was never advertised internally or externally, so Plaintiff was never given a fair chance to apply for the position.

23. The updated job description for the HR Manager position was tailored to align with Lynann's prior work experience, and the general description and essential functions of the job were tasks Plaintiff had been doing for almost a year as the HR Coordinator.

24. Plaintiff was then asked to train Lynann on how to do the job of an HR Manager.

25. On February 18, 2024, Plaintiff was called into a meeting with Johnson and Lynann where Johnson reviewed Plaintiff's personnel file and read aloud portions of it in an attempt to humiliate her. Johnson mentioned that Plaintiff had no experience in HR, despite Plaintiff having been with the City for 8 years and in HR for 5 of those years.

26. On February 19, 2024, after observing no improvement in the work environment, Plaintiff reiterated her concerns to both Johnson and Lynann. No action was taken.

27. From February 19, 2024, onward, Johnson excluded Plaintiff from department meetings and assigned Lynann to review all of Plaintiff's emails before sending them, subjecting her to unwarranted scrutiny.

28. On February 23, 2024, Plaintiff was excluded from a key meeting with city leadership regarding a tuition reimbursement she was still handling. When Lynann stopped by Plaintiff's office asking about one of the employee's reimbursements, Lynann told Plaintiff to sit down, took all the documents, and the task was reassigned to Seth without informing Plaintiff.

29. On February 23, 2024, Plaintiff filed a formal complaint with Interim City Manager Glenn Whitcomb regarding a racially hostile and retaliatory work environment created by Johnson, citing specific incidents of discrimination.

30. On February 27, 2024, Plaintiff was called into a meeting with Johnson and Lynann where Johnson informed her that she knew Plaintiff had spoken to Whitcomb, that her time in the Human Resources Department had come to an end, and that she would have to find somewhere else to work within the city.

31. Johnson accused Plaintiff of failing to follow the chain of command for complaints, despite Plaintiff adhering to the City's Personnel Policy and escalating the matter only after prior attempts to resolve her concerns directly with Johnson and Lynann.

32. The process of being falsely accused of violating the chain of command and the forced transfer out of the Human Resources Department created an enormous amount of stress for Plaintiff, forcing her to take Family Medical Leave.

33. Plaintiff requested a reasonable accommodation based on her diagnosed medical problems, but Johnson refused to approve it.

34. On August 9, 2024, Plaintiff was terminated via email from Johnson, who claimed that Plaintiff's accommodation request could not be made with the restrictions outlined in her Fitness for Duty form.

35. Johnson inaccurately stated that Plaintiff's essential functions questionnaire claimed to avoid contact with the HR Director, rendering her unable to perform any job within the City.

36. The termination letter also blamed Plaintiff for delays in submitting the essential functions questionnaire, even though the City gave her extensions, and referenced

"irregularities" in the questionnaire, implying that Plaintiff may have altered the document.

37. Plaintiff filed an EEOC charge and a complaint with the Florida Commission on Human Relations, which issued a "No Cause" determination.

38. An evidentiary hearing was held on February 27, 2025.

## COUNT I - DISCRIMINATION BASED ON RACE AND NATIONAL ORIGIN VIOLATION OF 42 USCS § 2000e-2 AND SECTION 1981 OF THE CIVIL RIGHTS ACT OF 1866

39. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 38 as if fully set forth herein.

40. Plaintiff belongs to a protected class based on her race and her national origin.

41. Plaintiff is of Puerto Rican Hispanic heritage, which places her in two protected classes.

42. Plaintiff was qualified for her position.

43. Plaintiff was qualified for her position as evidenced by her ten years of employment with the City with no disciplinary actions or negative evaluations, and Johnson's acknowledgment that Plaintiff was the most knowledgeable in the department.

44. Plaintiff suffered adverse employment actions.

45. Plaintiff suffered multiple adverse employment actions, including being reprimanded for translating for a White/Hispanic Spanish-speaking resident, being excluded from essential meetings, having her responsibilities reassigned, being transferred out of the HR Department, being denied reasonable accommodation, and ultimately being terminated on August 9, 2024.

46. The circumstances give rise to an inference of discrimination.

6

47. The circumstances giving rise to an inference of discrimination include Johnson's and Lynann's derogatory comments about Hispanic residents being "undocumented" and seeking public assistance rather than employment, Johnson's dismissive behavior toward Plaintiff, the tailoring of the HR Manager job description to fit Lynann's qualifications while excluding Plaintiff from consideration despite her performing many of the duties, and the retaliatory transfer and termination following Plaintiff's complaints about discrimination.

48. The Plaintiff's race and national origin were motivating factors in the discriminatory treatment that she was subjected to by Human Resources Director Floris Johnson.

49. Plaintiff's race was also the but-for reason for the Defendant's adverse actions.

## COUNT II - RETALIATORY HOSTILE WORK ENVIRONMENT IN VIOLATION OF 42 USCS § 2000e-3 AND SECTION 1981 OF THE CIVIL RIGHTS ACT OF 1866

50.  Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 38 as if fully set forth herein.

51. Plaintiff engaged in statutorily protected activity.

52. Plaintiff engaged in statutorily protected activity when she complained to HR Manager Lynann on February 13, 2024, to HR Director Johnson on February 14, 2024, to both Johnson and Lynann on February 19, 2024, and to Interim City Manager Whitcomb on February 23, 2024, about discriminatory treatment and hostile work environment.

53. Plaintiff also participated in protected activity when she opposed the Defendant's discriminatory treatment of White/Hispanic residents who did not speak English and needed translation services.

54. Plaintiff suffered adverse employment actions.

55. Plaintiff suffered adverse employment actions, including being transferred out of the HR Department on February 27, 2024, being denied reasonable accommodation, and being terminated on August 9, 2024.

56. There is a causal connection between the protected activity and the adverse actions.

57. The causal connection is evidenced by the transfer occurring just four days after Plaintiff's complaint to Whitcomb, and Johnson explicitly acknowledging that she knew Plaintiff had complained to Whitcomb and stating that her "time in the HR Department had come to an end."

58. The workplace was permeated with discriminatory intimidation, ridicule, and insults that were sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

59. The workplace was permeated with discriminatory intimidation, ridicule, and insult as evidenced by Johnson's dismissive behavior toward Plaintiff, Johnson's offensive comment implying a female employee received a promotion because she "slept with someone," Johnson's criticism of Plaintiff for communicating with the Interim City Manager, Johnson telling Plaintiff to "stop talking" when she asked clarifying questions, Johnson's and Lynann's derogatory comments about Hispanic residents, Johnson's public humiliation of Plaintiff by reviewing her personnel file in front of others, and the retaliatory transfer, denial of accommodation, and termination following Plaintiff's complaints.

## COUNT III DISCRIMINATION BASED ON DISABILITY

60. Plaintiff incorporates as though fully stated herein the allegations contained in paragraphs 1-38.

61. The Plaintiff is a qualified person with a disability.

62. The Defendant was aware of the disability because Plaintiff filed paperwork requesting accommodations for her disability.

63. The Plaintiff suffered an adverse employment action, to wit, she was terminated.

64. The Plaintiff was terminated because she is a qualified person with a disability.

## PRAYER FOR RELIEF

A. Compensatory damages against defendant City of Deltona for emotional pain and suffering, psychological harm, and loss of enjoyment of life pursuant to 42 USCS § 1981a.

B. Back pay against defendant City of Deltona for lost wages and benefits from the date of termination to the date of judgment pursuant to 42 USCS § 2000e-5.

C. Front pay against defendant City of Deltona for future lost wages and benefits if reinstatement is not feasible.

D. Reinstatement to the position Plaintiff would have held but for the discrimination and retaliation.

E. Reasonable attorney's fees and costs pursuant to 42 USCS § 2000e-5.

F. Such other relief as the Court deems just and proper.

/s/ *Jerry Girley*
JERRY GIRLEY, ESQUIRE
Florida Bar No: 35771
THE GIRLEY LAW FIRM PA
117 East Marks Street Suite A
Orlando, Florida 32803
Tel: 407-540-9866
Fax: 407-540-9867
phyllis@thegirleylawfirm.com